IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BELINDA K., | CV 20-141-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Titles II of the Social Security Act, 42 U.S.C. § 401 et seq.

## I. **Procedural Background**

Plaintiff filed an application for disability insurance benefits on September 27, 2018, alleging disability since March 2, 2018 based on physical and mental impairments. (Doc. 13 at 170-76). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 13 at 74-99; 14-36). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated April 1, 2020, the agency's final decision for purposes of

judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

On November 8, 2021, the Social Security Administration issued a "Notice of Award" awarding Plaintiff disability benefits on a subsequent application for disability benefits under Title II, wherein the Commissioner found that Plaintiff was disabled as of April 1, 2020, which is the day after the date of the ALJ's decision that is now under review in this matter. (Docs. 19; 19-1).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where

evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not

proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9ᵗʰ Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still

4

do on a regular and continuing basis despite his limitations. 20 C.F.R. §§
404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a
claimant's residual functional capacity is a critical part of steps four and five of the
sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual
functional capacity to perform her past relevant work. 20 C.F.R. §§
404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to
engage in past work, the burden shifts to the Commissioner at step five to establish
that the claimant can perform other work that exists in significant numbers in the
national economy, taking into consideration claimant's residual functional
capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and
416.920(4)(v). The ALJ may satisfy this burden through the testimony of a
vocational expert or by referring to the Medical-Vocational Guidelines set forth in
the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this
burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating
Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since her alleged onset date of March 2, 2018. (Doc. 13

at 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: strain/sprain of cervical spine and thoracic spine; degenerative disc disease lumbar with slight convex curvature; sacroiliitis; fibromyalgia, migraines/occipital neuralgia, right knee patellofemoral medial compartment chondral abnormality and bilateral bursitis. (Doc. 13 at 19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 13 at 21.)

The ALJ then found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following limitations:

> She can lift, carry, push, and pull 10 pounds frequently, 20 pounds occasionally; walk and stand about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes and scaffolds. She needs to avoid concentrated exposure to extreme cold, noise (greater than 3/5 on the scales set forth in the DOT/SCO or moderate); needs to avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (wet, slippery, uneven surfaces, unprotected heights, and dangerous machinery). She can understand, remember, and carry out simple, details, complex tasks; maintain attention, concentration, persistence, pace for such [*sic*] for 8-hour workdays and 40-hour workweeks; tolerate interaction with supervisors, coworkers, public; tolerate usual work situations; and tolerate changes in routine work settings.

(Doc. 12 at 22.) At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as an executive director, and all three components of the composite job including billing clerk, dispatcher and office clerk. (Doc. 13, at 31). Because the ALJ found Plaintiff capable of past relevant work, she did not proceed to step five. The ALJ determined that Plaintiff was not disabled from March 2, 2018 through the date of her decision. (Doc. 13, at 32).

Plaintiff raises three main issues on appeal. First, Plaintiff argues the ALJ improperly assessed and rejected the opinions of her treating and examining medical sources. Second, Plaintiff maintains the ALJ improperly evaluated her mental impairments at step two and did not include all of her limitations in the residual functional capacity assessment. Third, Plaintiff argues ALJ erred by not providing clear and convincing reasons for discounting her subjective symptom testimony. The Court addresses these arguments in the order set forth below.

## A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting her testimony. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 13 at 25).

At her administrative hearing, Plaintiff testified that she has daily chronic pain, cannot sit in one position or stand for long periods of time, and that she spends about four hours a day lying down, which provides her some relief. She testified that she can walk for about 20 minutes but no more than a half hour when shopping, and cannot squat or bend. She explained that she cannot take medications due to side effects, and cannot not lift more than ten pounds. Plaintiff further testified that she has good days and bad days in terms of her back pain, and that she stays in bed on her bad days. Plaintiff also testified that she experiences

migraines which do not respond to medication, and that sleep is the only thing that helps. She described suffering from blurry vision two to three times a week, and experiencing dizziness as a result of her migraines. Plaintiff testified that she has depression and anxiety, and two to three times a week she spends the day crying. (Doc. 13, at 46-63).

The ALJ provided a detailed summary of the medical evidence, and then discounted Plaintiff's testimony as to the severity of her physical and mental impairments for various reasons. (Doc. 13, at 26-29). With respect to Plaintiff's mental impairments, the ALJ noted that her mental status exams were consistently normal. The ALJ then linked this statement to the record, citing treatment notes from August 2018 reflecting that Plaintiff denied having anxiety and depression (Doc. 13, at 708). Consistent with the ALJ's reasoning, Mahoney's mental status examination findings and observations were either normal or reflected relatively mild symptoms and limitations. In addition, contrary to Plaintiff's testimony that she spends two to three days a week crying, the ALJ observed that crying spells were not documented in the medical records. (Doc. 13, at 28). The Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony regarding her mental health symptoms.

As to Plaintiff's physical impairments, the ALJ found the evidence was not consistent with a disabling level of limitations because Plaintiff's treatment had been conservative. (Doc. 13, at 28). The ALJ noted that Plaintiff was treated at the Montana Center for Wellness and Pain Management from October 2018 to January 2019, and her treatment had included physical therapy. (Doc. 13, at 28). An ALJ may rely on evidence of conservative treatment when discounting a claimant's testimony. See e.g. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain).

"Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated," such as fibromyalgia. *Revels*, 874 F.3d at 667. In *Revels*, the Ninth Circuit identified prescription pain medication, facet and epidural injections, and steroid injections as aggressive treatment for fibromyalgia. *Revels*, 874 F. 3d at 667. Here, in contrast, Plaintiff was not taking prescription pain medication and there is no evidence that she received any injections for pain. The ALJ reasonably found that Plaintiff's conservative treatment undermined her allegations of disabling pain, which was a clear and convincing reason for finding her not entirely credible.

The ALJ further found that Plaintiff's treatment notes consistently reflect that she was in no acute distress, which is not consistent with the degree of pain alleged and her alleged need to frequently alternate between sitting and standing. The ALJ linked Plaintiff's testimony to contradictory evidence in the record, citing treatment notes from November 2019 stating that Plaintiff was in no acute distress. (Doc. 13, at 672). *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Plaintiff argues the ALJ overlooked that Plaintiff's fibromyalgia was often described by her health care providers as acute. (See e.g. Doc. 13, at 680, 685, 692, 695). While the medical history portion of these treatment notes reflect that Plaintiff was diagnosed with "acute" fibromyalgia, the physical examination findings from those visits typically reflect that Plaintiff was in no acute distress. (See e.g. Doc. 13, at 484 & 485; 491 & 492; 499 & 500). This too was a clear and convincing reason for discounting Plaintiff's testimony.

The ALJ also discounted Plaintiff's subjective pain testimony on the ground that she was not taking medication. (Doc. 13, at 28). An ALJ may consider "the type, dosage, effectiveness, and side effects of any medication" when evaluating the claimant's testimony concerning the limiting effects of pain. See 20 CFR §§ 404.1529, 416.929. The ALJ noted that although Plaintiff testified to having side effects from medications and reported that to her providers (Doc. 13, at 54, 60,

372, 379, 386, 468, 469, 497, 503, 510, 523, 547, 552, 668, 674), Plaintiff had also reported "not liking to take pills" (Doc. 13, at 328) and having discomfort when swallowing medication (Doc. 13, at 578). While Plaintiff often reported that she was not able to tolerate the side effects of medication, the ALJ permissibly relied on inconsistent statements that she did not like taking pills as a basis for discounting her testimony.

The ALJ next found Plaintiff's testimony that she has difficulty using her arms to lift was not consistent with physical therapy records reflecting that she reported being able to manage light medium weights, but not heavy weights. (Doc 13, at 28). Plaintiff does not address this reason in her briefing, and does not explain how the ALJ's analysis was allegedly flawed. At her administrative hearing, Plaintiff testified that she only has problems with her arms if she has to lift, which she does not do because it affects her back. (Doc. 13, at 58). The ALJ reasonably found this testimony was undercut by physical therapy records reflecting that Plaintiff said pain prevented her from lifting heavy weights, but she could manage light to medium weights if they were conveniently positioned. (Doc. 13, at 665). See *Smolen v. Chater,* 80 F.3d at 1284 (the ALJ may consider ordinary techniques of credibility evaluation, including inconsistent statements about symptoms or limitations).

12

Finally, the ALJ found the record did not reflect that Plaintiff's migraines were as severe as she alleged, as there was no evidence of ongoing problems with dizziness or blurry vision. (Doc. 13, at 28).   The ALJ reasonably found the fact that Plaintiff was able to drive was not consistent with significant problems with dizziness or blurry vision. Again, Plaintiff does not explain how this portion of the ALJ's analysis was allegedly flawed, and the Court finds this was a legitimate reason for discounting Plaintiff's testimony as to the severity of her migraines and associated symptoms.

The ALJ provided two additional reasons for discrediting Plaintiff's testimony: (1) her physical examinations were largely normal with minimal findings and (2) her daily activities were not consistent with her alleged limitations. Even if these two reasons were not supported by substantial evidence, as discussed above the ALJ provided other clear and convincing reasons that are supported by substantial evidence for discounting Plaintiff's testimony. Therefore, the Court upholds the ALJ's adverse credibility determination.

### B.    Medical Opinion Evidence

When assessing a claimant's residual functional capacity, the ALJ must provide a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 102 (9th Cir.

2012). The Ninth Circuit has repeatedly held that an ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or examining physician's uncontradicted opinion, and specific and legitimate reasons for rejecting a treating or examining physician's contradicted opinion. See *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). The ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675.

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their

14

persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a).
Those factors include supportability, consistency, relationship with the claimant,
specialization, and "other factors that tend to support or contradict a medical
opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c),
416.920(c). The two most important factors are supportability and consistency. 20
C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive she finds all of
the medical opinions and prior administrative medical findings, and set forth
specific "articulation requirements" for the ALJ's evaluation of the medical
opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical
source provides multiple opinions, the ALJ is not required to articulate how she
"considered all of the factors for all of the medical opinions" and will instead
articulate how she considered those opinions "together in a single analysis using
the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1). Because
supportability and consistency are the most important factors, the ALJ must
explain how she considered these factors in the decision. Generally, the ALJ is not
required to explain how she considered the remaining factors. 20 C.F.R. §§
404.1520c(b)(2), 416.920(b)(2). However, when the ALJ finds that two or more
medical opinions are equally well-supported and consistent with the record but are

not exactly the same, she must articulate how she "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2).

Because Plaintiff filed her claim for disability on September 27, 2018, the revised regulations apply in this case. The Commissioner contends that the revised regulations require a new approach on judicial review, and supersede Ninth Circuit caselaw establishing heightened standards for an ALJ's treatment of treating and examining source opinions. Plaintiff counters that the standard established by the Ninth Circuit survives, and an ALJ is still required to provide "clear and convincing reasons" or "specific and legitimate reasons" for rejecting a medical opinion.

The Ninth Circuit has not yet addressed whether the new regulations meaningfully change how courts are to review the adequacy of an ALJ's reasoning, and whether an ALJ is still required to provide "clear and convincing" or "specific and legitimate" reasons for rejecting a treating or examining medical source opinion. See e.g. *Sergio L. v. Kijakazi,* 2021 WL 549441, at * 5 (C.D. Cal. Nov. 22, 2021);  *Brandee M. v. Saul*, 2021 WL 2781803, at *3 (C.D. Cal. July 1, 2021).

Nevertheless, while the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a

16

medical opinion unpersuasive. *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c).

Thus, the Court must determine whether the ALJ properly evaluated the medical opinions using the factors set forth above. See e.g., *Ryan L.F. v. Commissioner of Social Security,* 2019 WL 6468560 *3-4 (D. Or. Dec. 12, 2019). Plaintiff argues the ALJ failed to properly weigh the opinions of her treating physician, Dr. Eric Brandeberry, and the consultative examining psychologist, Dr. David Mahoney.

### 1.    Dr. Brandeberry

Primary care physician Dr. Brandeberry saw Plaintiff 11 times between July 2018 and November 2019, during which time he treated her primarily for fibromyalgia chronic pain, and headaches. (Doc. 13, at 475-501; 510-514; 548-555, 668-682, 690-694).

On May 1, 2019, Dr. Brandeberry wrote a letter stating that Plaintiff "has significant fibromyalgia and chronic pain issues to the point where her muscles cause pain and she has some difficulty walking at times," and "also has significant

chronic headaches." (Doc. 13, at 556). Dr Brandeberry wrote that "[t]he combination of these 2 main issues make it difficult for her to even function and certainly it would be very difficult if not impossible for her to maintain a job she feels." (Doc. 13, at 556).

October 7, 2019, Dr. Brandeberry completed a Medical Opinion: Re Ability to Do Work-Related Activities (Mental) form assessing Plaintiff's mental limitations.(Doc. 13, at 557-559). Dr. Brandeberry indicated that Plaintiff was seriously limited or greater in 12 of the 16 areas of functioning needed to do unskilled work, and was unable to meet competitive standards in all four areas of functioning needed to do semiskilled and skilled work. (Doc. 13, at 561-562). Dr. Brandeberry further indicated that Plaintiff was seriously limited in her ability to interact appropriately with the general public, and unable to meet competitive standards in her ability to travel in [an] unfamiliar place or use public transportation. (Doc. 13, at 562). Dr. Brandeberry also opined that Plaintiff would be absent more than four days per month due to her impairments or treatment. (Doc. 13, at 603).

On October 10, 2019, Dr. Brandeberry completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form assessing Plaintiff's physical limitations. (Doc. 13, at 564-69). Dr. Brandeberry found that

18

Plaintiff could: occasionally lift up to 10 pounds but never more than that; sit for 15 to 20 minutes at a time for a total of two hours in an eight hour work day; stand for 5 to ten minutes at a time for a total of two hours in an eight hour work day; walk for 20 minutes at a time for a total of one hour in an eight hour work day; occasionally reach, handle, finger, and feel but never push or pull, and; occasionally stoop but never climb, stoop, kneel, crouch, or crawl. (Doc. 13, at 560-62). Dr. Brandeberry also identified several environmental limitations, finding that Plaintiff could occasionally operate a motor vehicle, but never work around unprotected heights, moving mechanical parts, humidity and wetness, pulmonary irritants, extreme heat or cold, or vibrations. (Doc. 13, at 564).

The ALJ considered all three of Dr. Brandeberry's opinions and rejected them for various reasons. The ALJ was required to articulate how she considered supportability and consistency as factors in rejecting Dr. Brandeberry's opinions. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Additionally, those reasons must be legally sufficient and supported by substantial evidence. Because the ALJ's evaluation of Dr. Brandeberry's October 10, 2019 opinion provides a basis for remand, the Court addresses this opinion first.

a.    *October 10, 2019 opinion*

The ALJ considered Dr. Brandeberry's October 10, 2019 opinion addressing

Plaintiff's physical limitations, but found it unpersuasive for four reasons. First, the ALJ found that Dr. Brandeberry had completed the form "relying on physical therapy records with no indication if [Plaintiff] was self-limiting or what her effort or motivation or reliability were." (Doc. 13, at 35). The record reflects that Plaintiff participated in 17 physical therapy sessions between August 2018 and November 2018. (Doc. 13, at 613-664). In early October 2019, Dr. Brandeberry referred Plaintiff to the same physical therapy group for a disability performance test, and he completed the October 10, 2019 physical capacity evaluation form in conjunction with the performance testing he had requested. (Doc. 13, at 565, 610-11).

Plaintiff's physical therapy records do not suggest that she was in any way malingering or engaging in self-limiting behavior. Nor does it appear that Dr. Brandeberry ever questioned Plaintiff's motivation, or suggested she was engaging in exaggerated pain behavior or somehow malingering. The Court fails to see how that fact that Plaintiff's health care providers did not observe her engaging in self-limiting behavior in any way undermines Dr. Brandeberry's opinion. To the extent the ALJ was implicitly suggesting that Plaintiff's health care providers overlooked or failed to mention self-limiting behavior, the ALJ's reasoning is purely speculative and is not supported by substantial evidence.

Second, the ALJ discounted Dr. Brandeberry's opinion because there was "no objective support for limiting [Plaintiff] to never pushing/pulling, using feet to operate foot controls, climbing ramps/stairs, stooping, kneeling, crawling, exposure to unprotected heights, moving mechanical parts, humidity/wetness, dusts, odors, fumes, pulmonary irritants, [or] extreme temperatures," and "no support for limiting [Plaintiff] to only occasional reaching, handling, fingering, and feeling." (Doc. 13, at 35).

While this reason seemingly addresses the supportability factor, it does not do so in any meaningful way and is the same kind of non-specific boilerplate language the Ninth Circuit has said is insufficient. See *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). The Ninth Circuit has required an ALJ to link purportedly inconsistent evidence with the discounted medical opinion. *Embrey*, 849 F.2d at 421-422. While the ALJ discusses the medical evidence elsewhere in her decision, she does not identify what specific evidence is inconsistent with Dr. Brandeberry's letter opinion, and does not explain why her interpretation of the evidence rather than the ALJ's is

correct. See *Embrey*, 849 F.3d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Contrary to the ALJ's stated reason, the longitudinal medical records, including Dr. Brandeberry treatment notes, reflect that Plaintiff was experiencing a wide array of fibromyalgia-related symptoms. See SSR 92-2 (stating that "longitudinal records reflecting ongoing medical evaluation and treatment … are especially helpful in establishing both the existence and severity" of fibromyalgia). Plaintiff carried a diagnosis of acute fibromyalgia (Doc. 13, at 475, 483, 490, 491, 498, 499, 511, 521, 532, 543, 548, 552, 553, 566, 674, 676, 677, 686, 691, 692, 694) and her symptoms included back pain, and arm and leg pain and numbness (See e.g. Doc. 13, at 328-29, 338-40, 362, 365, 369, 373, 375, 379, 383, 395, 397, 398, 400, 402, 404, 442, 475, 482, 489, 497, 510, 522, 525, 529, 531, 535 539, 540, 543, 571-72, 674-75, 679, 684-687, 691, 695-96). The ALJ's conclusory statement that the postural, manipulative, and environmental limitations identified by Dr. Brandeberry were not supported by the objective medical evidence is not a legitimate reason for discounting his opinion.

Third, the ALJ rejected Dr. Brandeberry's opinion because the form he completed "contain[ed] minimal explanation to supporting limitations." (Doc. 13,at

35). An ALJ may reject a check-box assessment that does not contain an adequate explanation from the medical source. See *Talbott v. Commissioner of Social Security Administration*, 2020 WL 1847084, at *6 (D. Ariz. Apr. 13, 2020) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). If an opinion in check-box form is supported by a long treatment relationship and medical records that reinforce the opinion, however, the opinion may be entitled to substantial weight. *Talbott*, 2020 WL 1847084, at *6 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014)). See also *Esparza v. Colvin,* 631 Fed. Appx. 460 (9th Cir. 2015) (finding that although the treating physician's opinions were in the form of a check-box questionnaire, that is not a proper basis for rejecting an opinion that is supported by treatment notes, and remanding for further administrative proceedings). As discussed above, Dr. Brandeberry's medical records document that Plaintiff suffered from an array of fibromyalgia-related symptoms. Because the ALJ did not explain why her interpretation of those medical records rather than Dr. Brandeberry's was correct, this was not a legitimate reason for rejecting Dr. Brandeberry's opinion.

Finally, the ALJ found that Plaintiff's "physical exams throughout the record" did not support the physical limitations identified by Dr. Brandeberry. (Doc. 13, at 35). In particular, the ALJ found that Plaintiff's physical exams were

23

"largely normal with tenderness noted at times," she consistently had "a normal gait (with the exception of a few physical therapy records)" and she was "consistently neurologically intact with full strength." (Doc. 13, at 35). This is not a supportable reason for rejecting Dr. Brandeberry's opinion.

Fibromyalgia is a rheumatic disease with symptoms that "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease." *Benecke v Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). The Ninth Circuit has repeatedly recognized that fibromyalgia is unusual in that "those suffering from it have muscle strength, sensory functions, and reflexes that are normal." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). See also *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (holding "[t]he ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (internal quotations omitted); *Satterwaite v. Astrue*, 781 F.Supp.2d 898, 912 (D. Ariz. 2011) (recognizing that "fibromyalgia patients may present no objectively alarming signs and may manifest normal muscle strength and neurological reactions and have a full range of motion"); *Martin v. Saul*, 2020 WL 1305619, at *6 (E.D. Cal. March 19, 2020) (finding the ALJ erred in rejecting a medical source's fibromyalgia opinion based on normal physical findings,

including normal gait and muscle strength). Thus, evidence that certain findings during Plaintiff's physical exams were normal is not a legitimate basis for rejecting Dr. Brandeberry's opinion.

The ALJ erred by failing to adequately consider and discuss the supportability and consistency factors for evaluating the persuasiveness of Dr. Brandeberry's opinion. On remand, the ALJ must clearly explain how she considered these factors, and her explanation must be supported by substantial evidence in the record.

b.    *October 7, 2019 opinion*

The ALJ considered Dr. Brandeberry's October 7, 2019 opinion addressing Plaintiff's mental limitations, but found it unpersuasive for four reasons: (1) Dr. Brandeberry filled the form out based on what Plaintiff told him she could do; (2) Dr. Brandeberry's assessment was not supported by his treatment notes, which consistently reflected that Plaintiff had normal psychiatric exams; (3) Dr. Brandeberry's opinion was not consistent with Plaintiff's daily activities, including her ability to drive; and (4) Dr. Brandeberry's opinion was not consistent with mental exams from other providers or the exam contained in the report provided by the psychological consultative examiner, Dr. David Mahoney. (Doc. 13, at 30-31).

First, the ALJ found that Dr. Brandeberry filled the form out based on what Plaintiff told him she could do and what her "complicating factors were." (Doc. 13, at 34). As a general rule, an ALJ may discount a medical opinion that is based on a claimant's self-reporting if the ALJ determines that the claimant's subjective reporting is not credible. See *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009). But this rule does not apply in the same manner to medical opinions regarding mental illness, which "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). It is not proper for an ALJ to reject a medical source opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). While there is no indication that Dr. Brandeberry questioned Plaintiff's credibility, his treatment notes contain few observations regarding Plaintiff's mental symptoms and thus do not support the severe limitations identified in his October 7, 2019 opinion.   As explained above, the ALJ provided sufficient reasons for discrediting Plaintiff's subjective testimony. Therefore, this reason for rejecting Dr. Brandeberry's opinion is supported by substantial evidence.

Second, the ALJ found that Dr. Brandeberry's assessment was not supported by his treatment notes, which consistently reflected that Plaintiff had normal psychiatric exams. (Doc. 13, at 34). This reason is supported by substantial evidence. During nearly every visit, Dr. Brandeberry remarked on the line for "psych" exam that Plaintiff was well-kempt, cooperative, and had normal speech and movement. (Doc. 13, at 478, 486, 492, 496, 513, 549, 554, 672, 677 ). Although these observations do not directly relate to any of the categories of mental functioning evaluated by Dr. Brandeberry, the observations are consistently benign and do not provide any support for Dr. Brandeberry's opinion that Plaintiff was seriously limited or greater in nearly all areas of mental functioning. The fact that Dr. Brandeberry did not make any significant psychiatric findings undercuts his opinion as to the severity of Plaintiff's mental limitations. While Dr. Brandeberry's treatment notes are filled with clinical observations and findings about Plaintiff's physical impairments, his notes contain little to no mention of any mental symptoms, limitations, or complaints. Thus, the Court finds that the ALJ permissibly discounted Dr. Brandeberry's opinion as to the disabling severity of Plaintiff's mental limitations because it was not supported by the observations in his treatment notes.

Third, the ALJ discounted Dr. Brandeberry's opinion on the ground that it was not consistent with mental exams from other providers or the exam contained in the report provided by the psychological consultative examiner. Although it is not entirely clear what mental exams from other providers the ALJ was referencing, she did clearly refer to the report provided by psychological consultative examiner Dr. David Mahoney. As set forth in more detail below, Dr. Mahoney documented mostly normal and mild mental status examination findings in his report, including normal attention and focus, good recall and memory, appropriate affect but pessimistic mood and mild depression, normal speech flow, appropriate thought contend, normal judgment, and an average fund of knowledge. The ALJ discussed these findings in her evaluation of the medical evidence (Doc. 13, at 3), and permissibly found that Dr. Brandeberry's opinion was not persuasive because it was not consistent with the mental examination findings set forth in Dr. Mahoney's report.

The Court finds the ALJ adequately considered the supportability and consistency factors, and her explanation as to why she found Dr. Brandeberry's opinion unpersuasive is supported by substantial evidence in the record.

Even if the remaining reason provided by the ALJ for rejecting Dr. Brandeberry's opinion was erroneous, any such error would be harmless because

28

the ALJ gave other reasons that were supported by substantial evidence for finding the opinion unpersuasive. See e.g *Vallandingham v. Colvin,* 2015 WL 1467189, at *3 (C.D. Cal. March 26, 2015). Because the ALJ provided three valid reasons supported by substantial evidence for finding Dr. Brandeberry's opinion unpersuasive, the Court need not address whether the ALJ erred in discounting Dr. Brandeberry's opinion on the ground that it was not consistent with Plaintiff's daily activities, including her ability to drive. See e.g *Melinda R. Commissioner of Social Security*, 2018 WL 6329083, at *2 (W.D. Wash. Dec. 4, 2018).

c.    <em>May 1, 2019 opinion</em>

The ALJ found Dr. Brandeberry's May 1, 2019 letter opinion unpersuasive for four reasons: (1) the opinion was not supported by his treatment records and was not consistent with the overall weight of the evidence; (2) it appeared that Dr. Brandeberry was recounting Plaintiff's perceptions of her ability to work as he qualified his opinion with "she feels"; (3) the opinion related to an ultimate issue reserved to the Commissioner; and (4) the opinion did not contain a function-by-function assessment of Plaintiff's abilities and limitations.

To the extent Dr. Brandeberry stated that Plaintiff was unable to maintain a job, the ALJ properly pointed out that a statement by a medical source that a claimant is unable to work is an opinion on an issue reserved to the Commissioner

and is not a medical opinion. 20 C.FR. §§ 404.1527(d), 416.927(d). But the fact that a medical opinion addresses an issue reserved to the Commissioner is not by itself a reason for rejecting that opinion. See *Holohan v.* Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001). The ALJ is still required to "consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 95-5p, 1996 WL 374183, at *2 (July 2, 1996).

The ALJ met that burden here, and discounted Dr. Brandeberry's letter opinion to the extent he indicated "it would be very difficult if not impossible for [Plaintiff] to maintain a job she feels" because this statement was apparently based on Plaintiff's own assessment of her ability to work. An ALJ may discount a medical opinion that is based on a claimant's self-reporting if the ALJ determines that the claimant's subjective reporting is not credible. See *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009). As discussed above, the ALJ provided sufficient reasons for discrediting Plaintiff's subjective testimony. Therefore, to the extent Dr. Brandeberry's opinion essentially stated that Plaintiff felt she was not able to work, the ALJ permissibly rejected it.

The ALJ also discounted Dr. Brandeberry's opinion because he did not provide a function-by function assessment of Plaintiff's abilities and limitations.

30

While Dr. Brandeberry's letter does not provide the sort of detailed function-by-function assessment contained in his two other opinions, he does state that Plaintiff "has significant fibromyalgia and chronic pain issues to the point where her muscles cause pain and she has some difficulty walking at times," and "also has significant chronic headaches." (Doc. 13, at 556). Dr. Brandeberry's treatment notes contain many references to Plaintiff's chronic pain issues and headaches (Doc. 13, at 475-501, 510-514, 547-555, 668-682, 690-694). Given that this matter must be remanded for the ALJ to reevaluate Dr. Brandeberry's October 10, 2019 opinion, the ALJ should also reassess Dr. Brandeberry's May 1, 2019 letter opinion.

### 2.   Dr. David Mahoney

On January 9, 2019, psychologist Dr. David Mahoney performed a mental status examination of Plaintiff that included a diagnostic interview, review of records, adult checklist of concerns, and mental status examination. (Doc. 13, at 502-506). Based on the results of the mental status examination, Dr. Mahoney found that Plaintiff: had normal attention and focus; was correctly oriented to date, time, place, and person; had good recall and memory; displayed appropriate affect but her mood was pessimistic and mildly depressed; demonstrated logical and well organized thoughts and language, but difficulties with pain and low energy

preoccupied her thinking; demonstrated an average fund of knowledge and showed a better than normal ability for abstract thought, and; revealed normal judgment. (Doc. 13, at 505).

Dr. Mahoney diagnosed Plaintiff with Adjustment Disorder – Unspecified With Mild Anxiety And Depressed Mood and Mild Neurocognitive Disorder Due to TBI (By History). (Doc. 13, at 506). In the Summary and Recommendations portion of his report, Dr. Mahoney found that Plaintiff showed a good ability for understanding, remembering, and applying information; interacted well with others because of her good communication skills and a pleasant disposition; showed an ability to concentrate and persist in completing challenging intellectual tasks; and maintained an acceptable pace of performance but some of her efforts apparently were slowed due to pain. (Doc. 13, at 505). Dr. Mahoney further found that Plaintiff was "experiencing a mild level of depressive symptoms including anxious distress," and "was not capable of employment at this time." (Doc. 13, at 506).

At step two, the ALJ relied on Dr. Mahoney's mental status examination findings in determining that Plaintiff's mental impairments were not severe. As required at step two, the ALJ identified and rated the paragraph B criteria assessing degree of impairment in four areas of functioning. (Doc. 13, at 20.) Citing Dr. Mahoney's findings and other evidence of record, the ALJ found that Plaintiff had

no limitations in the areas of understanding, remembering, or applying

information, interacting with others, and the ability to adapt or manage oneself, and

mild limitations in area of concentrating, persisting, or maintaining pace. (Doc. 8,

at 21.) While the ALJ accepted and relied on Dr. Mahoney's mental status findings

when assessing the severity of Plaintiff's mental impairments, she did not find Dr.

Mahoney's opinion persuasive to the extent he indicated that Plaintiff "is not

capable of employment at this time." (Doc. 13, at 506).

The ALJ found Dr. Mahoney's "ultimate opinion that [Plaintiff] is unable to

work" was not persuasive for three reasons: (1) it was not supported with

observations during his exam; (2) it appeared the opinion was in regard to the

effects of physical conditions, most of which Dr. Mahoney gleaned from Plaintiff's

subjective reports and appearance, and this area was outside Dr. Mahoney's area of

expertise; and (3) Plaintiff's physical exams, course of treatment, daily activities,

and overall weight of the evidence is not consistent with a physical disabling level

of limitation, and this area was outside Dr. Mahoney's area of expertise. (Doc. 14,

at 30).

The ALJ first found that Dr. Mahoney's observations during the mental

status exam did not support his ultimate opinion that Plaintiff was not able to work.

As set forth above, Dr. Mahoney's mental status examination findings and

33

observations were either normal or reflected relatively mild symptoms and limitations. The Court agrees that Dr. Mahoney's observations during the mental status examination he performed do not support his opinion that Plaintiff was unable to work.

The ALJ further noted that Dr. Mahoney's opinion was apparently also based on the effects of Plaintiff's physical impairments. As reflected in the "medical history" portion of Dr. Mahoney's report, Plaintiff explained that she had been diagnosed with fibromyalgia, experiences daily headaches, and has such difficulty functioning that it takes her over an hour to get out of bed and three hours to get dressed to leave her house. (Doc. 13, at 503). In the "activities of daily living" portion of his report, Dr. Mahoney wrote that Plaintiff "explained that she can only stand for two minutes before needing to stop her activity," and needs to take a nap four to five times a week for one to three hours at a time. (Doc. 13, at 504). Plaintiff reported that she does not travel anywhere without her husband's assistance and has been known to suddenly have an attack of pain and fall to the floor. (Doc. 13, at 504).

To the extent Dr. Mahoney's opinion was based on Plaintiff's physical impairments, the ALJ found it unpersuasive because it was gleaned from Plaintiff's subjective reports and appearance, and was outside his area of expertise as a

34

psychologist. While specialization is one factor the ALJ may consider when evaluating the persuasiveness of a medical source opinion, 20 C.F.R. § 1502c(c), the mere fact that Dr. Mahoney is psychologist is not a sufficient basis for discounting his opinion. Nevertheless, as discussed above, the ALJ provided sufficient reasons for discrediting Plaintiff's subjective testimony. Thus, the ALJ properly discounted Dr. Mahoney's opinion because it was apparently based on Plaintiff's own description of her physical abilities and limitations.

## C.    Severity of Mental Impairments at Step Two

Plaintiff argues the ALJ improperly evaluated the severity of her mental impairments at step two. The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. 20 C.F.R. § 404.1545(1)(5)(i). The ALJ found Plaintiff's mental impairments were medically determinable under the regulations. (Doc. 13 at 20.) As required, the ALJ considered the four areas of functions identified in the "paragraph B" criteria, and found that Plaintiff no limitations in understanding, remembering, or applying in formation; no limitations in interacting with others; mild limitations in concentrating, persisting or maintaining pace, and; no limitations in adapting or managing herself. (Doc. 13, at 20-21). The ALJ additionally found Plaintiff had several severe physical impairments and continued with the disability evaluation.

35

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (any alleged error at step two was harmless where step two was decided in Plaintiff's favor). In that evaluation, the ALJ considered and properly discounted Dr. Brandeberry's and Dr. Mahoney's opinions as to the severity of Plaintiff's mental limitations, and provided legally sufficient reasons for rejecting her subjective statements regarding the severity of her mental impairments. Accordingly, the ALJ's step-two analysis is supported by substantial evidence.

### D.    Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all of her impairments and resulting limitations into a hypothetical question presented to the vocational expert. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the claimant. *Embrey*, 849 F.2d at 422. "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

The Court has determined that the ALJ did not adequately discount Dr. Brandeberry's October 10, 2019 opinion. This error may have affected the ALJ's hypothetical, and in turn, undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

### E.    Remand

Plaintiff requests the Court remand this matter for an award of benefits. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should reassess the medical opinion evidence as discussed above. The ALJ should also clarify what, if any, additional limitations are incorporated into the RFC assessment to account for Plaintiff's impairments. In addition, the Court acknowledges that the ALJ is in the best position to evaluate the medical evidence. Providing the ALJ with the opportunity to reevaluate the medical evidence on

remand will remedy the identified defects in the original administrative proceedings.

## IV.    **Conclusion**

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 13th day of January, 2022.

Kathleen L. DeSoto
United States Magistrate Judge